IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JON P. GORDON,                                )
                                              )
                         Plaintiff,           )
                                              )        Civil Action No. 25-1480
            v.                                )
                                              )
FRANK BISIGNANO                               )
COMMISSIONER OF SOCIAL SECURITY,              )
                                              )
                         Defendant,           )


MEMORANDUM OPINION

## I.      INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Jon P. Gordon

("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act

("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).   Plaintiff contends the Administrative Law Judge

(the "ALJ") erred in failing to incorporate the clarified testimony of the vocational expert ("VE")

and failing to explain the deviation from the VE's testimony in the final decision.   Plaintiff

asserts that the ALJ's decision is not supported by substantial evidence and should be remanded

for payment of benefits or, alternatively, for clarification of the vocational findings.   The

Commissioner asserts that the ALJ's decision is supported by substantial evidence and the

Commissioner's decision should be affirmed.

Plaintiff filed a motion for summary judgment (ECF No. 11) which was denied as moot

because the Federal Rules of Civil Procedure Supplemental Rules for Social Security do not

contemplate that kind of motion.[1]   Plaintiff filed a brief (ECF No. 12), which is the appropriate

means to seek relief. Fed. R. Civ. P. SUPP SS 6.   The Commissioner filed a brief in opposition

to plaintiff's motion for summary judgment asserting that the ALJ's decision should be affirmed.

(ECF No. 14.)   For the reasons set forth below the court will affirm the decision of the

Commissioner.


II.   **PROCEDURAL HISTORY**

Plaintiff filed previous applications for disability insurance benefits ("DIB") in February

2017 and May 2018, which were each denied at the initial level, with no appeals filed. (R. at

261-262.)

On January 12, 2023, plaintiff protectively filed a Title XVI application for SSI

beginning October 1, 2021, which is at issue before the court. (R. at 10.)   The claim was initially

denied on April 20, 2023, and again upon reconsideration on October 23, 2023. (Id.)   On

December 13, 2023, plaintiff requested a hearing, which was conducted by video conference

before the ALJ on July 16, 2024. (Id.)   Plaintiff agreed to appear by video and testified at the

hearing. (Id.)   Plaintiff was represented by an attorney at the hearing. (Id.)   An impartial VE

also testified at the hearing. (Id.)

---

1. The committee notes accompanying the Federal Rules of Civil Procedure Supplemental Rules
for Social Security explain: "Rule 5 states the procedure for presenting for decision on the merits
a § 405(g) review action that is governed by the Supplemental Rules. Like an appeal, the briefs
present the action for decision on the merits. **This procedure displaces summary judgment or
such devices as a joint statement of facts as the means of review on the administrative
record**. Rule 5 also displaces local rules or practices that are inconsistent with the simplified
procedure established by these Supplemental Rules for treating the action as one for review on
the administrative record." Fed. R. Civ. P. SUPP SS 6 (emphasis added).

In a decision dated August 26, 2024, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under §§ 216(i) and 223(d) and was able to return to other relevant work. (R. at 30.)   Plaintiff timely requested a review of that determination, and by letter dated August 13, 2025, the Appeals Council denied the request for review and the decision of the ALJ became the final decision of the Commissioner. (R. at 1-5.)   Plaintiff subsequently commenced the present action seeking judicial review.

## III.    PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

### A.    Background

Plaintiff was born on October 29, 1990, and was 32 years old, a "younger individual," at the time his application for benefits was filed and was 33 years old at the time of the hearing before the ALJ. (R. at 39.)   He has a high school education. (R. at 19, 254.)   Plaintiff is divorced, and lives alone in an efficiency apartment for low income adults with disabilities. (R. at 39, 43, 50.)   He is capable of cleaning his apartment, walking to do his own grocery shopping because he does not have a driver's license, and some basic cooking. (R. at 40, 47, 50.)

Plaintiff previously worked for a cleaning company and some fast-food restaurants. (R. at 234-236.)   The ALJ determined he had "not engaged in substantial gainful activity" since his application date for benefits, January 12, 2023. (R. at 12.)   During the hearing the ALJ heard testimony from plaintiff regarding his limitations, predominantly focusing on his heart issues and mental health limitations. (R. at 41-55.)   Plaintiff reported frustration in his ability to hold a job because he has trouble "understanding what they're wanting," referring to employers. (R. at 44.)

3

He discussed that his anxiety and "overwhelming worrying" stems from the frustration he gets when he does not understand something. (R. at 45-46.)

During a typical day plaintiff takes walks, reads, watches television shows, talks with friends and family on social media, and visits with family or goes to his counseling appointments. (R. at 51-52.)   Plaintiff receives counseling bi-monthly for a reported past alcohol problem, and weekly for mental health counseling. (R. at 53.)   Plaintiff's reported medication list includes: atenolol, buspirone, Cymbalta, gabapentin, magnesium, multivitamin, and Seroquel and vivitrol, (R. at 271), which he testified at the hearing was replaced by Rivia. (R. at 49.)

**B.    Medical Record**

**1.    Doctor T. David Newman**

On April 18, 2023, plaintiff was seen and evaluated by T. David Newman, Ph.D., ("Dr. Newman"), for a consultative mental status evaluation for the Benefit Disability Determination ("BDD") office's use in making a determination of disability. (R. at 923-934.)   Following his one-time evaluation, Dr. Newman completed a medical source statement. (R. at 927-929.)   He noted plaintiff's psychiatric history as plaintiff reported it to him. (R. at 924.)   From his examination, Dr. Newman reported plaintiff to be cooperative, well-groomed, fluent and articulate, coherent and goal directed, and mildly anxious. (R. at 924-925.)   He noted plaintiff's basic math skills were "quite weak," but found plaintiff's "recent and remote memory skills" to be "mostly present" in that he could recall events from his background as well as from the recent past and current activities. (R. at 925.)    Dr. Newman recorded that plaintiff

> is for the most part independent for dressing, bathing and grooming. He is able to make simple food preparations and do general chores. He is able to go out to make purchases.

(R. at 926.)

In the medical source statement Dr. Newman supplied following his examination of plaintiff, he indicated in the check-boxes that plaintiff had a "moderate" limitation in his ability to "carry out complex instructions," and a "mild" limitation in his ability to "carry out simple instructions" in the sub-categories associated with the question regarding ability to understand, remember, and carry out instructions. (R. at 927.)   For the question asking about plaintiff's ability to appropriately interact with supervisors, co-workers, and the public, as well as changes in a routine work setting, Dr. Newman indicated "marked" impairments for all four sub-categories. (R. at 928.)   In the open text field following the check-boxes that instructed the reviewer to "identify the factors that support your assessment," Dr. Newman wrote "anxiety" without expounding or adding amplifying information. (Id.)   Dr. Newman's assessment concluded with no additional recommendations to add and reported plaintiff's prognosis as "guarded, given the apparent persistence of symptom complaints." (R. at 926.)

### 2.    Doctor John Carosso

On February 15, 2024, plaintiff was seen by John Carosso, Psy.D., ("Dr. Carosso") for a psychological examination (R. at 982-993.)   Dr. Carosso evaluated plaintiff at the behest of plaintiff's former therapist to consider an autism diagnosis. (R. at 982.)   After interviewing plaintiff and recording plaintiff's reports of his medications, family history, current concerns and history of education, medical issues, drug and alcohol abuse and employment, he administered several diagnostic tests to plaintiff "to obtain quantitative levels of functioning." (R. at 982-985.) Plaintiff scored "severe risk" on the Adult Autism Assessment, based on his self-reported responses on the assessment questionnaire. (R. at 985.)   Plaintiff also scored in the "severe"

range for autism on the Social Responsiveness Scale-2 (SRS-2), and his intellectual functioning range was found to be "borderline" based on his Full Scale IQ score. (Id.)   Dr. Carosso opined plaintiff's "judgment and insight tend to be poor" based on his observation, but found "attention and concentration are good." (R. at 986.)   Dr. Carosso diagnosed plaintiff with Autism Spectrum Disorder based on plaintiff's "verbal account and assessments," even though plaintiff presented in "an appropriate fashion" because there was "enough behind-the-scenes information to meet the criteria for the diagnosis." (Id.)   Dr. Carosso recommended plaintiff continue with weekly therapy and medication, and utilize community supports such as Vocational Rehabilitation for employment placement assistance. (R. at 986-987.)

### 3.    State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and residual functional capability ("RFC") to work. (R. at 66-84.)   Mental health professional Douglas P. Schiller, Ph.D., on April 20, 2023, provided a psychiatric review and Jonathan W. Bortz, M.D., on March 15, 2023, noted findings about plaintiff's medical conditions. (R. at 66-74.)   On reconsideration, Erin Nicole Urbanowics, Psy.D., on September 18, 2023, assessed plaintiff's mental health record, and Vishwanath M. Khajuri, M.D., reviewed other medical conditions on October 23, 2023. (R. at 75-84.)

Mental health reviewers of the file each determined that plaintiff was impacted due to his autism spectrum disorder, substance addiction disorders, and anxiety disorder, finding he had moderate limitations in the paragraph "B" criteria of the listings in a) interact with others; b) concentrate, persist, or maintain pace; and c) adapt or manage oneself; and they found mild

limitation in the area of understand, remember, or apply information. (R. at 69-70, 79.)   In the

initial disability determination, the mental health reviewer noted plaintiff did not have

understanding and memory limitations, but did have sustained concentration and persistence

limitations. (R. at 71.)   Upon reconsideration, the reviewer found the same sub-areas of

sustained concentration and persistence moderately limited as upon initial review.   Both mental

health reviewers added the following note in the mental RFC "additional explanation" block:

> The allegations are partially supported by the medical and treatment history, the CE [consultive examination] of Dr. Newman, and the ADL [activities of daily living] report; symptoms associated with depression, anxiety, and an eth[anol] abuse problem are reportedly present and have recently been treated with outpatient care. However the m[ental] status and some activity reporting are indicative of the claimant being able to understand/follow at least basic instructions.
> The 4/23 CE report of Dr. Newman has been reviewed and some of the opinions are not fully consistent with all the other evidence, and are thus viewed as containing over estimates of his actual restriction.
> His mental condition does not preclude sustained involvement in routine, non complex, low step command tasks/activities.
> Even if the eth[anol] abuse fully stops his overall functioning would still be about the same level as is portrayed within this MRFC.

(R. at 72-73, 82.)

The medical health reviewers at both the initial determination and upon reconsideration

found plaintiff's "physical impairment non-severe." (R. at 69, 78.)   The reviewer upon

reconsideration specifically noted the activities of daily living that plaintiff was capable of

continuing, stating: "He is for the most part independent for dressing, bathing, and grooming.

Able to make simple food preparations and do general chores. Able to go out to make

purchases." (R. at 78.)

Due to plaintiff's age, education, and RFC, each medical health reviewer recommended a

finding of "not disabled" because plaintiff can adjust to other work. (R. at 73, 82.)   Both

reviewers recommended plaintiff was capable of "heavy" exertional work with no exertional limitations, but limited to unskilled work due to other mental limitations. (Id.)   The reviewers, noted "[plaintiff's] mental condition does not preclude sustained involvement in routine, non complex, low step command tasks/activities." (Id.)

## IV.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).   The judicial review of a final decision is plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).   With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.   "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).   The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).   This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).   The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).

8

## V.  DISCUSSION

### A.  Administrative Law Judge's Findings

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

Proceeding through the sequential evaluation process, the ALJ determined at step one that plaintiff had not engaged in substantial activity since his claimed disability date, (R. at 12); at step two acknowledged plaintiff had severe impairments of depression, anxiety, bipolar disorder, and autism spectrum disorder, (id.); and at step three found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 13.)  Plaintiff exhibited multiple moderate limitations, but none that rose to the level of serious or extreme as required to satisfy the "paragraph B" criteria, and the record of his conditions did not satisfy the "paragraph C" criteria. (R. at 15.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.  The ALJ independently determined that plaintiff's record supports greater exertional limitations than those found by the state medical examiners and accounted for those by "limiting him to light exertion without concentrated exposure to extreme heat or humidity." (R. at 18.)  The ALJ considered

9

plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewers' reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except:
> • He can have no exposure to concentrations of extreme heat or humidity;
> • He can have no exposure to concentration of pulmonary irritants such as gasses fumes dust and odors;
> • He can understand, remember, and carry out simple instructions;
> • He can frequently make commonsense work-related decisions;
> • He should not be asked to prioritize tasks;
> • He can occasionally interact with co-workers;
> • He requires occasional access to a supervisor for clarification and instruction;
> • He can have no interactions with the public;
> • He cannot perform work demanding a specific production rate such as assembly line work or work that requires hourly quotas;
> • He requires work that is self-paced, rather than being paced by a machine;
> • He requires work performed in a stable work environment where the workplace remains generally the same from day to day;
> • He cannot do any traveling as a part of the job; and
> • He requires an opportunity for training for up to but not more than 30 days.

(Id.) (footnote omitted).   At step four, the ALJ determined that plaintiff had no past relevant work. (R. at 18.)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was work an individual with an RFC like plaintiff was capable of performing given the physical and mental limitations noted in the RFC findings. (R. at 56-61.)   Utilizing plaintiff's data as a younger individual, with at least a high school degree, vocational history, RFC and, based on his earlier testimony at the hearing, the VE opined that there were a significant number of jobs available in the national economy at the light level that a hypothetical individual with an RFC like plaintiff would be capable of performing, i.e. a marker with 165,000 jobs in the U.S. economy, an office helper with 5,300 jobs, a photocopy machine operator with 6,000 jobs, a router with 22,000 jobs, or a routing clerk with

123,000 jobs. (R. at 57-59.)   The ALJ asked the VE if the job market may have changed since the last update to the Dictionary of Occupational Titles ("DOT") and the VE responded that the marker and routing clerk may use some handled electronic devices now instead or marking items by sticker. (R. at 59.)   The VE, based on the limitations identified in the RFC, testified that "interaction" and "stable environment" were not defined terms in the DOT, but that for limitations that were not enumerated in the DOT, she used her "education, training, and expertise in placing individuals with disabilities over the years, as well as, discussions with employers about their job tasks and tolerances." (R. at 60-61.)

The plaintiff's counsel asked about the need for occasional supervisor availability:

> And in any of the positions you noted or others you might have indicated to us, if that need for the supervisor availability for clarification of the job duties continues past the 30 day training period and it occurs at least once per week, how would that affect the employability of this person?

(R. at 63.)   In response, the VE stated,

> It would -- honestly, it would depend on the employer. I've seen an employer who accept once the person's trained that's unless a mistake is made or something change. But there are employers also who will have daily checklists and go around and note them and make sure the employees are on task. So, it's possible that one time a week would not be an issue, It's also possible it would become an issue. So if the person after the first 30 days was having some issues and they asked for help the one time a week up to a month, the employer may be okay with it. After that, they may say the person either needs to be retrained or let go.
>
> …
>
> I would say before COVID, it would be a snap that the person would be let go very easily and they would replace them. It has become more difficult for employers to find people who are consistent who show up, but obviously, what the employer is looking for is someone to work. If the person can't perform or is making too many mistakes, or as you noted, needed reminders, they still would actually try to send them to Human Resources to work something out. If they couldn't, they would let them go.

(R. at 63-64.)   The ALJ concluded at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform…." (R. at 19.)   The ALJ concluded that plaintiff was not disabled. (R. at 20.)

**B.     Alleged Error - Failing to Accept the "Clarified" Testimony of the VE Regarding Access to Supervisory Instructions Once Per Week After a 30-Day Training Period**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Plaintiff's appeal of denial of SSI benefits focuses solely on whether the ALJ erred by "ignoring the clarified vocational expert testimony." (Pl.'s Br., ECF No. 12 at 10.)   Specifically, he argues that the ALJ did not properly consider the testimony of the VE, who "clarified that an individual who would need ongoing clarification instructions from a supervisor at least once per week after their initial training period would likely be terminated." (Id. at 11.)   Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed physical limitation or the severity of any mental health limitation; accordingly, plaintiff's impairments will not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

This issue requires a determination whether the question asked by plaintiff's counsel was a clarification or an additional limitation.   Plaintiff alleges that the ALJ's failure to explain why the final decision deviated from the VE's testimony concerning the need for access to a supervisor once per week after the 30-day training period was error. (Pl.'s Br., ECF No. 12 at 11.)   Plaintiff does not contest the ALJ's findings concerning plaintiff's RFC, determining plaintiff was limited to light exertional work with additional limitations based on plaintiff's

impairments, including "occasional access to a supervisor for clarification and instruction." (R. at 15.)   He acknowledges that "the impairments of the record should be included in the RFC." (Id. at 12.)   See Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

Plaintiff takes the argument in Burns, that a hypothetical posed to a vocational expert must include all a claimant's impairments or the vocational expert's response is not substantial evidence, and argues further that "where there is an apparent, unresolved conflict about occupations identified by a vocational expert, the ALJ's conclusion at step five is not supported by substantial evidence." (Pl.'s Br., ECF No. 12 at 12) (quoting Boone v. Barnhart, 353 F.3d 203, 208 (3d Cir. 2003)).    This argument is unavailing for two reasons: first, Boone did not establish a categorical rule that "an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal, Boone, 353 F.3d at 206; second, and more pertinent here, there was no "unexplained conflict" between the VE testimony and the DOT.   The ALJ queried the VE about anything from her testimony that was in conflict with the DOT. (R. at 60.)   When asked about limitations that were not specially enumerated in the DOT, the VE replied that she based her testimony on "interaction," "production rate," and "stable environment" which were not specifically defined by the DOT, utilizing her "education, training, and expertise in placing individuals with disabilities over the year, as well as, discussions with employers about their job tasks and tolerances." (R. at 60-61.)[2]

---

2. According to regulations, "[w]hen offering testimony, the experts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'" Biestek v. Berryhill, 587 U.S. 97, 100 (2019) (quoting Social Security Ruling, SSR 00–4p, 65 Fed. Reg. 75760 (2000)).

Plaintiff argues his question clarified the "on occasion" limitation and pointed to the definition of "occasionally" used in the companion manual to the DOT. (Pl.'s Br., ECF No. 12 at 13.)   Defendant argues an analogous definition from SSR 83-10 is "occurring from very little up to one-third of an eight-hour workday." (Def.'s Br., ECF No. 14 at 7.); See Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).   Notably, the most common definitions of "on occasion" are "from time to time, now and then" or "sometimes, but not often." See On Occasion, DICTIONARY.COM, https://www.dictionary.com/browse/on-occasion (last visited, April 29, 2026); On Occasion, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/on-occasion (last visited, April 29, 2026).

Plaintiff's only argument on appeal is that the ALJ failed to consider the hypothetical presented to the VE by his attorney, with respect to the "limitation that the Plaintiff should have access to a supervisor to receive clarification and instructions on occasion." (Pl.'s Br., ECF No. 12 at 12; R. at 56.)   The ALJ, however, did ask the VE to opine about work a hypothetical person could perform, who among other limitations, should have access to a supervisor to receive clarification and instruction on occasion. (R. at 56.)[3]   In other words, the "on occasion" caveat was one of the limitations that the ALJ presented to the VE in the first hypothetical. (R. at 56.)   The VE, considering this limitation, among others, found there was work the hypothetical person could perform. (R. at 57.)   The ALJ was asked about further limitations, such as if "the

---

3. It is widely recognized that "[t]estimony of a vocational expert constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record." Rotshteyn v. Massanari, 158 F. Supp. 2d 525, 538 (E.D. Pa. 2001); see Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987).

person would need to work alone … involv[ing] things and not people," and the VE still found available jobs the hypothetical person could perform, such as the router and marker identified previously, and an additional routing clerk position. (R. at 58.)

Plaintiff's counsel asked the VE a series of follow-up questions, one about "need for the supervisor availability [to plaintiff] for clarification of the job duties [ ] past the 30 day training period and it <u>occurs at least once per week</u>." (R. at 63) (emphasis added).    The VE responded with the testimony quoted above that "it would depend on the employer." (<u>Id.</u>)    The plaintiff's attorney's question included an additional limitation, i.e., supervisor availability "at least once per week," and it was not posed as a clarification of the question the ALJ previously asked the VE. (R. at 63.)    The court concludes that the hypothetical question asked by plaintiff's attorney contained an additional limitation and was not a clarification.

"The fact that Plaintiff's counsel also posed to the vocational expert an alternative hypothetical question that contained more limitations than did the RFC actually found by the ALJ is irrelevant when the RFC ultimately found by the ALJ is supported by substantial evidence." <u>Delaine M. v. Bisignano</u>, No. 3:24-CV-1108, 2026 WL 822910, at *18 (D.N.J. Mar. 19, 2026).    Here, the ALJ had detailed plaintiff's limitations in the RFC.    Plaintiff is not alleging error in the RFC, just that the "at least once per week" addition noted by plaintiff's attorney should have been considered by the ALJ.

Finally, plaintiff points to the Dr. Newman's opinion about marked limitations and argues that in light of plaintiff's "marked inability to respond to usual work situations … as well as difficulties carrying out even simple instructions, [plaintiff's] access to a supervisor 'on occasion' would still likely be at least once a week, although likely far more, again resulting in

15

termination." (Pl.'s Br., ECF No. 12 at 13.)   Plaintiff, however, relies on Dr. Newman's opinion that the ALJ found just "somewhat persuasive." (R. at 18.)   No other medical source found such "marked" limitations to interact appropriately with others at work or unusual work situations or changes in a routine work setting. (R. at 928.)

The ALJ, based on the totality of the information in the record, found the "marked" limitations in Dr. Newman's opinion "overstates [plaintiff's] difficulties interacting appropriately with others given that [plaintiff] exhibited an adequate manner of relating." (R. at 18.)   The ALJ found plaintiff has "moderate" limitations in understanding, remembering, and applying information; in interacting with others; and in concentrating, persisting, or maintaining pace; and "mild" limitations in adapting or managing oneself. (R. at 13-14.)   The ALJ concluded: "The full longitudinal record does not support finding a greater degree of functional limitation." (R. at 17.)   Plaintiff did not contest these findings.

The RFC that the ALJ determined for plaintiff included numerous environmental and functional limitations to account for his non-severe physical impairment and severe mental health impairments and cognitive issues. (See R. at 15, 17.)   The ALJ, in determining plaintiff's RFC, explained the work-related limitations she found after review of the record, specifically plaintiff's difficulties understanding and following instructions and staying focused, and presented hypotheticals to the VE based on those findings.   The VE's identification of jobs a hypothetical person with an RFC like plaintiff would be able to perform that exist in significant numbers in the national economy took those limitations into consideration.

The ALJ sufficiently explained the reasons, based on the totality of plaintiff's record, for her conclusions in the development of plaintiff's RFC and for accepting the testimony of the VE

based on the VE's testimony consistent with the DOT and "a combination of education, training, professional expertise, and discussions with employers." (R. at 19.)   While plaintiff may view the situation differently, there is substantial evidence to support the RFC developed by the ALJ and the ALJ's acceptance of explanations given by the VE of jobs available in the economy that plaintiff could perform.   There is substantial evidence to support the ALJ's decision.

## VI.    CONCLUSION

The ALJ explained why she developed the RFC that she did, with multiple limitations included for less than the full range of work available at the light exertional level, taking into account all plaintiff's severe and non-severe impairments. The hypotheticals presented to the VE included all the limitations from the RFC and the VE found jobs that exist in the national economy for an individual with a residual functional limitation like plaintiff's RFC.   The ALJ sufficiently explained her decisions for developing the RFC, her presentation of the RFC to the VE in hypotheticals, and her acceptance of the VE's findings of available jobs that plaintiff could perform.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.   The court will affirm the decision of the Commissioner.

An appropriate order and judgment will be entered.


Dated: June 1, 2026

                                                BY THE COURT:


17

s/Joy Flowers Conti
Hon. Joy Flowers Conti
Senior United States District Judge